**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **ROLAND N. NYONKA,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: PWG-15-645** |
| **MVM, INC.,**[1] | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION**</u>

Roland Nyonka sues his former employer MVM, Inc. ("MVM") for national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging that MVM terminated him from his position as a security officer and then failed to rehire him "because of his national origin (Cameroon, Africa) and because he brought a prior complaint of discrimination/retaliation against Defendant." Compl. ¶¶ 1, 19–21, ECF No. 1. Pending is MVM's Motion for Summary Judgment, ECF No. 26, which the parties fully briefed, ECF Nos. 26-1, 28, 31.[2] Also pending is MVM's Motion to Strike, ECF No. 29, in which MVM asks the Court to strike portions of the Declaration that Nyonka provided in support

---

[1] Plaintiff's Complaint refers to Defendant as MVM Security, Inc., but Defendant's proper name is MVM, Inc. *See* Def.'s Mot. 1 n.1, ECF No. 26. The docket shall be updated to reflect Defendant's proper name.

[2] MVM filed a Motion to Seal, ECF No. 25, requesting that its Motion for Summary Judgment, its Memorandum in Support, and Joint Exhibits 1, 3, and 10–13 be sealed. Given that Plaintiff does not oppose the Motion to Seal; the briefs and exhibits contain "information about the termination and arrest records of current and former employees"; and MVM filed redacted versions for the public, ECF Nos. 27, 27-1, and 32, the Motion to Seal IS GRANTED. Although these filings are sealed, I have determined, after reviewing this Memorandum Opinion, that none of its contents warrants sealing this Memorandum Opinion. ECF No. 32 includes all of the parties' Joint Exhibits.

of his Opposition, ECF No. 28-1, *see also* Jt. Ex. 130–31 (same).   That motion, also, is fully

briefed.   ECF Nos. 34, 35.[3]   Because two of the three identified statements are inadmissible, I

will grant MVM's motion and strike them from Plaintiff's Declaration.   Without those two

statements, Nyonka has not identified more than a scintilla of direct evidence of discriminatory

animus and cannot establish a prima facie case of discrimination or retaliation.   Accordingly, I

will grant MVM's Motion for Summary Judgment.

## **Factual Background**

On July 31, 2012, Nyonka filed a previous lawsuit for national origin discrimination and

retaliation against MVM, the for-profit security company that was his employer at the time.

*Nyonka v. MVM, Inc.*, DKC-12-2264 ("*Nyonka I*").   *Nyonka I* settled in September 2013

pursuant to a confidential settlement agreement.   Compl. ¶ 11; Def.'s Sum. J. Mem. 4.   Nyonka

later observed Ruben Carabello, his manager at the time, "reviewing the settlement agreement."

Pl.'s Decl. ¶¶ 6–7, Jt. Ex. 130. James Smith became Nyonka's supervisor shortly after that, *id.*

¶ 10, and Carabello spent about a month training him, Pl.'s Dep. 96:22–97:1, Jt. Ex. 34.

On November 22, 2013, Nyonka was arrested.   Pl.'s Decl. ¶ 12, Jt. Ex. 131.   MVM's

Employee Handbook required "[e]mployees [to] notify their Department or Program Manager of

any arrest, charge, plea, or conviction for any unlawful activity within 24 hours, and provide a

written report before the end of the employee's next working day."   Handbook 51, Jt. Ex. 9.   By

---

[3]   In compliance with the Case Management Order, ECF No. 3, MVM filed a pre-motion
conference request with regard to its proposed Motion to Strike, ECF No. 29.   I held a
conference call on February 5, 2016; informed the parties that I would treat MVM's letter
request as a motion to strike; and permitted Nyonka to file a response, not to exceed five pages,
and MVM to file a reply, not to exceed five pages.   ECF No. 33.   Additionally, prior to the
conference call in which I approved the motion and limited the filings, MVM filed a fourteen-
page memorandum in support, ECF No. 31-1.   Insofar as Nyonka responded to arguments raised
in the memorandum without objecting to its filing, *see* Pl.'s Opp'n to Mot. to Strike 2 (arguing
admissibility of second sentence of Paragraph 9), I will address those arguments.

his next workday, November 25, 2013, Nyonka informed MVM of his arrest, and provided the

court documents; he provided a written report the next day.[4]   Pl.'s Dep. 126:8–127:7, Jt. Ex. 42;

Smith Decl. ¶¶ 7, 9.   On November 26, 2013, he met with Smith, who told him that he was

suspended indefinitely, "pending investigation."   Pl.'s Dep. 138:12–139:1, Jt. Ex. 44–45.   In

December, Nyonka received a letter from Smith on behalf of MVM that stated:

> Mr. Nyonka; on 26 November 2013, you were place[d] on administration
> suspension due to being arrested.   You must provide MVM Inc. and NIH
> management legitimate documentation from the State of Maryland/Prince
> George's County Court indicating all charges have been resolved and you have
> been exonerated by the Maryland court/justice system.
>
> Mr. Nyonka; in the event you do not provide the requested documentation,
> by the COB on 26 December 2013, MVM Inc. and NIH management have no
> choice but to release you without prejudice (termination of employment) as you
> remain illegible to return to work due to failure to maintain contract compliance.

Jt. Ex. 122; *see* Pl.'s Dep. 143:21–144:5, 145:16–146:3, Jt. Ex. 46–47 (discussing letter).   On

December 26, 2013, Smith called Nyonka, who informed him that "his criminal matter had not

yet been resolved."   Smith Decl. ¶ 11, Jt. Ex. 3.   On that basis, Smith terminated Plaintiff's

employment on December 27, 2013, effective December 26, 2013. *Id.* ¶ 12, Jt. Ex. 4.

The State's Attorney entered a *nolle prossequi* on January 9, 2014, and the charges

against Nyonka were dismissed.   Nyonka notified MVM, providing Smith and MVM's Human

Resources Department with the court documents.   Pl.'s Dep. 149:3–153:14, Jt. Ex. 47–48.   He

---

[4] The parties dispute whether Nyonka reported his arrest on November 22, 2013. *Compare* Pl.'s Dep. 121:18 – 123:20, 128:16-22, Jt. Ex. 41–42 (Plaintiff testified that he did not "remember what [he] said," other than that "police were involved," but that, in his view, "when you are with police, it means you are arrested."), *with* Nov. 26, 2013 email from Lieutenant Scales to Mr. Smith, Jt. Ex. 117 ("Nyonka called … around 2130 & stated that he was to report for duty at 5 … on Friday at 1500 & was unable to call because he was in the emergency room at the hospi[t]al").   Whether he promptly reported his arrest is not material to the issues on summary judgment.

did not reapply for his position, which already had been advertised, and MVM did not rehire him. *Id.* at 152:8–155:12, Jt. Ex. 48–49.

## Standard of Review on Summary Judgment

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009). Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(3), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed. R. Civ. P. 56(c)(4).

If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* This means that the nonmovant "'must do

more than simply show that there is some metaphysical doubt as to the material facts,'" because "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (footnote omitted)).

> "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (quoting *Anderson*, 477 U.S. at 247–48).

### Discrimination

Title VII states that it is

> an unlawful employment practice for an employer...to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. 2000e-2(a). To prevail on a claim of national origin discrimination in employment, Nyonka may "demonstrate 'through direct or circumstantial evidence'" that his "national origin 'motivated the employer's adverse employment decision,'" or he "may 'proceed under a "pretext" framework'—commonly referred to as the *McDonnell Douglas*[5] approach—'under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination.'" *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 484 (D. Md. 2013) (quoting *Hill v. Lockheed Martin Logistics Mgmt.,*

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973).

*Inc.,* 354 F.3d 277, 284, 285 (4th Cir. 2004)); *see Holland v. Wash. Homes*, 487 F.3d 208, 213–

14 (4th Cir. 2007) (citing *Hill*).

> Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510, 520 (4th Cir. 2006) (internal marks omitted). "Only the most blatant remarks, [the intent of which] could be nothing other than to discriminate ... constitute direct evidence of discrimination." *Signal v. Gonzales,* 430 F. Supp. 2d 528, 541 n.5 (D.S.C. 2006) (internal bracket omitted) (quoting *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir. 1989)). If believed, direct evidence "would prove the existence of a fact ... without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.,* 56 F.3d 542, 548 (4th Cir. 1995) (internal marks omitted), *rev'd on other grounds,* 517 U.S. 308, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996). To defeat a motion for summary judgment, the evidence must show that the employer announced, admitted, or "otherwise unmistakably indicated" that an impermissible consideration was a determining factor, or that discrimination can properly be assumed from the circumstances. *Cline v. Roadway Express, Inc.,* 689 F.2d 481, 485 (4th Cir. 1982).

*Nana-Akua Takyiwaa Shalom*, 921 F. Supp. 2d at 484; *see Betof v. Suburban Hospital*, No.

DKC-11-1452, 2012 WL 2564781, at *6 (D. Md. June 29, 2012) ("To constitute direct evidence,

statements must be directly related to the employment decision in question").

To establish a prima facie case of national origin discrimination in employment under the

*McDonnell Douglas* approach, Nyonka must show "(1) membership in a protected class; (2)

satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment

than similarly situated employees outside the protected class." *Linton v. Johns Hopkins Univ.*

*Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011)

(citing *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004)).   Notably, although

Plaintiff focuses on his termination in his Complaint, Compl. ¶ 1, he refers also to MVM's

failure to rehire him, *id.* ¶¶ 19–21, and on summary judgment, he argues that "[h]is termination

and more importantly, *the failure to reinstate/rehire him*, is an adverse employment action," Pl.'s

Opp'n to Sum. J. 5.   MVM considers both acts as alleged adverse employment actions.  *See*

Def.'s Sum. J. Mem. 11; Def.'s Reply 8.   Therefore, I also will consider whether Nyonka has

shown the elements of a claim of national origin discrimination in a failure to rehire, that is: "(1)

[Plaintiff] is a member of a protected class; (2) the employer had an open position for which []he

applied; (3) []he was qualified for the position; and (4) []he was rejected for the position under

circumstances giving rise to an inference of unlawful discrimination." *Pugh v. Montgomery Cty.*

*Bd. of Educ.*, No. DKC-13-2862, 2016 WL 560793, at *6 (D. Md. Feb. 12, 2016) (citing *Brown*

*v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)), *aff'd*, No. 16-1260, 2016 WL 3971742 (4th Cir.

July 25, 2016).

Nyonka has the burden of establishing a prima facie case of discrimination under this

framework. *See McDonnell Douglas Corp. v Green*, 411 U.S. 792, 802 (1973); *see also*

*Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 267 (4th Cir. 2005). Then MVM

must demonstrate "that it acted with a legitimate, nondiscriminatory reason." *Anderson*, 406 F.3d

at 267 (citing *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001)). Provided

that MVM is able to make that showing, "then plaintiff must 'present evidence to prove that the

defendant's articulated reason was pretext for unlawful discrimination.'" *Id.* (citing *Murrell*, 262

F.3d at 257).

MVM argues that Nyonka's discrimination claim fails because he "has not produced any

evidence of direct discrimination" and he "cannot establish a *prima facie* case of discrimination"

under the *McDonnell Douglas* burden-shifting framework "because he cannot demonstrate that

he was performing his job at a satisfactory level at the time of his termination or that a similarly-

situated employee outside of his protected classes was treated more favorably." Def.'s Sum. J.

Mem. 9 n.10, 10–11.   In response, Nyonka contends that "[t]his case involves instances of direct

evidence of discriminatory animus by the decision maker involved in terminating Mr. Nyonka

and refusing to reinstate/rehire him after the charges against him were dismissed."  Pl.'s Opp'n to Sum. J. 3.  Nyonka cites Paragraphs 10 and 11 of his Declaration as "direct evidence that Mr. Smith displayed discriminatory animus towards African born employees."  *Id.* at 4.

Admissibility of Paragraph 10

In Paragraph 10, Nyonka declared: "Soon thereafter, my supervisor became James Smith. Co-workers and even managers repeatedly referenced a statement Mr. Smith made that he wished to "rid the workplace of accents."  I took that to mean persons like myself, who do not speak with an American accent, were targeted for termination."  Pl.'s Decl. ¶ 10.  Defendant moves to strike the second two sentences on the basis that they are "a rumor" and therefore "inadmissible hearsay."  Def.'s Mot. to Strike 2.

Mr. Smith's statement, as a direct expression of discriminatory intent by an employer, which is illegal, is an utterance of independent legal significance, regardless of its truth. Therefore, it is not hearsay.  *See Jude v. Health Mgmt. Associates of W. Virginia, Inc.*, 187 F.3d 629, 1999 WL 595352, at *2 (4th Cir. 1999) ("Statements that possess independent legal significance are not offered for their truth and consequently are not hearsay. In the most general terms, statements of independent legal significance form 'a part of the details of the issue under the substantive law and the pleadings,' which is to say that the underlying action necessarily involves utterances." (quoting *Wigmore On Evidence* § 1770)); *see also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 565 (D. Md. 2007) (stating that, when a statement's "'significance … lies solely in the fact that it was made'" and it is not "offered to prove its substantive truth" but rather "for some other purpose," it is not hearsay (quoting Fed. R. Evid. 801(c) advisory committee's note; citing Fed. R. Evid. 801(c))).  Stated differently, Mr. Smith's statement is a "'legally operative fact[]'" that "ha[s] relevance simply because [it was] made, regardless of [its]

literal truth or falsity." *Lorraine*, 241 F.R.D. at 565–66 (D. Md. 2007) (quoting Weinstein at § 801.11[3]-[4])).

But, the statements by "[c]o-workers and even managers" who "referenced" Smith's statement are hearsay, and therefore these two sentences from Paragraph 10 only are admissible if a hearsay exception applies to them. *See* Fed. R. Evid. 805. None of the exceptions set forth in Rules 803 and 804 apply, and there are no additional facts that would permit a determination of whether Rule 801(d)(2)(D) applies. Therefore, these statements are inadmissible hearsay and must be stricken from Plaintiff's Declaration. *See* Fed. R. Evid. 802.

<u>Admissibility of Paragraph 11</u>

In Paragraph 11, Nyonka declared: "I personally witnessed Mr. Smith mock an African born employee on the telephone by ridiculing him with his hands and facial expressions." Pl.'s Decl. ¶ 11. Defendant argues that "[t]he Court should strike and sanction Plaintiff because he failed to disclose this information in response to interrogatories," when Interrogatory No. 4 "request[ed] Plaintiff to '[i]dentify and describe with specificity all facts, including, but not limited to, acts, conduct, or comments you allege were made by any MVM employee or member of management which you believe support your claim that MVM terminated your employment because of your national origin.'" Def.'s Mot. to Strike 3. Nyonka does not dispute that he failed to disclose this observation in his response to Interrogatory No. 4, and he admits that he failed to mention it in his deposition. Pl.'s Opp'n to Mot. to Strike 3–4. In his view, however, it should not be excluded because "he described several instances of statements and several persons with knowledge of statements in his deposition," and simply "failed to cover them all." *Id.*

Yet Interrogatory No. 4 asked Plaintiff to disclose "all facts" about acts or comments by any MVM employee that support his claim of national origin discrimination, and he did not disclose this fact in his response.  Nor did he supplement his response with this fact, as Fed. R. Civ. P. 26(e)(1)(A) requires.  The November 16, 2015 discovery cutoff passed more than eight months ago. *See* Am. Scheduling Order, ECF No. 16.  To supplement at this late hour, Nyonka must have substantial justification for failing to disclose previously or the failure to disclose previously must be harmless.  *See* Fed. R. Civ. P. 37(c)(1); *Wake v. Nat'l R.R. Passenger Corp.*, No. PWG-12-1510, 2013 WL 1316431, at *4 (D. Md. Mar. 27, 2013); *S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).  In "determining whether nondisclosure of evidence is substantially justified or harmless," the Court exercises "broad discretion" and considers

> (1) the surprise to the party against whom the [evidence is offered]; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the [evidence] would disrupt the trial; (4) the explanation for the party's failure to [produce the evidence] before trial; and (5) the importance of the [evidence].

*S. States*, 318 F.3d at 596, 597 (internal quotation marks omitted).

Considering the fourth factor, Nyonka cannot show substantial justification because this fact stems from his own observation of Smith's actions before Nyonka filed suit.  *See* Pl.'s Decl. ¶ 11.  Therefore, he necessarily knew this fact when he initially responded to the interrogatories and, even where he substantially justified in forgetting to include it initially, he cannot justify his delay of more than eight months in supplementing.

However, considering the fifth factor, the failure to disclose previously is harmless because, while Smith's gestures and expressions may "reflect directly the alleged discriminatory attitude," they do not "bear on the contested employment decision."  *See Warch*, 435 F.3d at 520. Rather, they were made with regard to some other employee, "in a context unrelated to

Plaintiff's employment status" and were "not in any way linked to Plaintiff's termination" or MVM's failure to rehire him. *See Nana-Akua Takyiwaa Shalom*, 921 F. Supp. 2d at 484; *see also Betof*, 2012 WL 2564781, at *6. This certainly is not an instance where "the employer announced, admitted, or 'otherwise unmistakably indicated' that an impermissible consideration was a determining factor." *Nana-Akua Takyiwaa Shalom*, 921 F. Supp. 2d at 484 (quoting *Cline*, 689 F.2d at 485). Nor can "discrimination . . . properly be assumed from the circumstances," *see id.*, given that Nyonka provides no description of or context for the "hand[] [signals] and facial expressions" he witnessed, such that the conclusion that they showed discriminatory animus that informed the decision to terminate and not rehire Nyonka is purely speculative. Thus, even though Nyonka has not shown substantial justification, use of the statement on summary judgment, after failing to produce it in discovery months earlier, is harmless. Therefore I will exercise my discretion not to exclude it under Fed. R. Civ. P. 37(c)(1). *See S. States*, 318 F.3d at 596, 597; Fed. R. Civ. P. 26(e)(1)(A).

<u>Direct Evidence</u>

As discussed, the challenged sentences in Paragraph 10 are inadmissible, and the declaration in Paragraph 11 is only admissible because it does not provide direct or more than a scintilla of circumstantial evidence of discriminatory animus. Thus, the record, with evidence of Smith once making gestures and expressions that were not directed at Nyonka "'could not lead a rational trier of fact to find for [Nyonka].'" *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (footnote omitted)). Therefore, the direct evidence is insufficient to create a "genuine issue for trial." *Id.* (citations and quotation marks omitted). Therefore, Nyonka cannot survive summary

judgment by way of direct evidence.  *See id.*; *Nana-Akua Takyiwaa Shalom*, 921 F. Supp. 2d at 484; *Betof*, 2012 WL 2564781, at *6.

<u>Prima Facie Case</u>

I still must consider whether Nyonka could make out of a prima facie case of discrimination based on his termination or MVM's failure to rehire him under the *McDonnell Douglas* burden shifting framework. *See Nana-Akua Takyiwaa Shalom*, 921 F. Supp. 2d at 484. As noted, a prima facie case of discriminatory termination requires "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class." *Linton*, 2011 WL 4549177, at *5.  And, a prima facie case of discriminatory failure to rehire requires: "(1) [Plaintiff] is a member of a protected class; (2) the employer had an open position for which []he applied; (3) []he was qualified for the position; and (4) []he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Pugh*, 2016 WL 560793, at *6.

MVM challenges Nyonka's ability to establish the second and fourth elements of discriminatory termination. Def.'s Sum. J. Mem. 11.  The employer argues that "Plaintiff was undisputedly not meeting MVM's legitimate expectations, as MVM terminated Plaintiff's employment because he was arrested and unable to exonerate himself within thirty days, in violation of express MVM policy," and that "Plaintiff admits that he has not identified a similarly-situated, non-African, Security Officer who was treated more favorably than him under similar circumstances. *Id.*  Nyonka does not address MVM's arguments regarding his termination. Thus, he has abandoned his claim of discrimination based on termination. *See Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (concluding that plaintiff

"abandoned her harassment claim by failing to address that claim in her opposition to [defendant's] motion for summary judgment, or to offer clarification in response to [defendant's] reply brief").

Instead, Nyonka contends that he "me[]t the criteria for being *rehired* by supplying MVM with the documents MVM requested for reinstate[ment]/rehire." Pl.'s Opp'n to Sum. J. 6 (emphasis added). He asserts that "[t]hat same day [that his criminal case was dismissed *nolle prosequi*,] Mr. Nyonka supplied the court documents to MVM," and "he faxed the documents to Human Resources" the next day." *Id.* at 3. In his view, he "sent everything that MVM requested to it to be considered for rehiring," *id.*, and "[t]here is no argument that the documents he supplied were insufficient or untimely," *id.* at 5.

MVM counters that the documents Nyonka submitted did not constitute an application for rehire. Def.'s Reply 9. On that basis, MVM argues that Nyonka cannot demonstrate the second and fourth elements of discriminatory failure to rehire. *Id.* According to MVM, Nyonka "undisputedly, did not reapply for employment or follow-up with Mr. Smith or Human Resources to explore re-employment." *Id.* MVM argues that, even though the letter Smith sent Nyonka regarding his suspension and possible termination stated: "'Mr. Nyonka; if you have any questions pertaining to this letter; you may contact me on 301-435-5355,' . . . Plaintiff did not call Mr. Smith with any questions about his termination or rehire." *Id.* (quoting Jt. Ex. 122).

The undisputed evidence shows that MVM directed Nyonka to "provide MVM Inc. and NIH management legitimate documentation from the State of Maryland/Prince George's County Court indicating all charges have been resolved and you have been exonerated by the Maryland court/justice system . . . by the COB on 26 December 2013," or MVM would terminate his employment. Jt. Ex. 122. Thus, this documentation was MVM's requirement to avoid

termination, not to apply for reinstatement.  *See id.*   It also is undisputed that Nyonka did not

submit the documentation until January 9, 2014, after MVM already terminated him.  *See* Pl.'s

Opp'n to Sum. J. 3.   And, it is undisputed that Nyonka did not submit an application for his

former position or follow up with Smith or the Human Resources Department.  *See* Pl.'s Dep.

153:9–155:12, Jt. Ex. 48–49 (stating that he last called Smith January 9, 2014, last called

MVM's Human Resources Department January 10, 2014, and that "[t]here was no reason to fill

out an application"); Smith Decl. ¶ 15, Jt. Ex. 4 ("After January 9, 2014, Mr. Nyonka never

called me to explore re-employment with MVM."); Bradshaw Decl. ¶¶ 5–6, Jt. Ex. 125-26

(MVM's Manager of Human Resources declared that "On or about January 10, 2014, Mr.

Nyonka contacted me to state that his criminal case was dismissed, and to fax me his court

documents. [] Generally, I normally would have expected an employee who sent me such

documents to contact me against to discuss his or her employment status.  However, Mr. Nyonka

never called me and I never spoke with him again.").   Consequently, Nyonka has failed to

establish that MVM "had an open position for which []*he applied*."  *See Pugh*, 2016 WL 560793,

at *6 (emphasis added).

Moreover, as for evidence that the circumstances under which he was not rehired "giv[e]

rise to an inference of unlawful discrimination," *Pugh*, 2016 WL 560793, at *6, he insists:

> The National Origin animus expressed by Mr. Smith negates this alleged
> necessity [of establishing this element.]  When there is evidence of the kind of
> animus expressed by Mr. Smith, there is sufficient basis to infer National Origin
> discrimination to be the true reason for the refusal to reinstate/rehire Mr. Nyonka.

Pl.'s Opp'n to Sum. J. 6.  Thus, he concedes that he cannot establish the fourth element of a

prima facie case, and only could prevail based on the purported direct evidence of discriminatory

animus he offered.  *See id.*   But, as noted, he has not produced sufficient direct evidence of

discriminatory animus to survive summary judgment on his discrimination claim based on either

his termination or MVM's failure to rehire him.  Therefore, summary judgment in MVM's favor

is appropriate. *See Scott*, 550 U.S. at 380; *Nana-Akua Takyiwaa Shalom*, 921 F. Supp. 2d at 484;

*Betof*, 2012 WL 2564781, at *6.

### Retaliation

To succeed on a Title VII retaliation claim, a plaintiff first must show that (1) he

"'engaged in protected activity,'" (2) the employer "'took adverse action against [him],'" and (3)

"'a causal relationship existed between the protected activity and the adverse employment

activity.'"  *Westmoreland v. Prince George's Cnty., Md.,* 876 F. Supp. 2d 594, 612 (D. Md.

2012) (quoting *Price v. Thompson,* 380 F.3d 209, 212 (4th Cir. 2004)); *see Coates v. Vilsack*,

No. PWG-12-1787, 2015 WL 1013402, at *4 (D. Md. Mar. 6, 2015).  Again, the *McDonnell*

*Douglas* burden-shifting framework applies. *See Bryan v. Prince George's Cnty.,* 484 F. App'x

775, 776 (4th Cir. 2012).

MVM argues that Nyonka cannot establish a prima facie case of retaliation because

Smith did not know of his previous lawsuit at the time Smith terminated or failed to rehire him,[6]

such that there cannot be causation.  Def.'s Sum. J. Mem. 14–15.  Nyonka argues that, because

Nyonka's former manager, Carabello, knew about the lawsuit and the confidential settlement

agreement, "a sufficient inference" can be drawn that Smith knew too.  Pl.'s Opp'n to Sum. J. 7.

In support he offers his assertion in Paragraph 9 of his Declaration that the settlement

agreement's existence was "effectively publicized" to management, including Smith.  Pl.'s Decl.

¶ 9.

---

[6] Although MVM does not state explicitly that Smith did not know of Nyonka's previous lawsuit
at the time he *failed to rehire* Nyonka, MVM argues that Smith did not learn of the other suit
until June or July 2014, and Smith's purported refusal to reinstate Nyonka was January 9 and 10,
2014.

Admissibility of Paragraph 9

In Paragraph 9, Nyonka declared that his former manager Ruben Carabello's "access to the [settlement] agreement effectively publicized the existence of the settlement agreement amongst management and other employees," and MVM's attorney "Ms. McGuinnis indicated that she was aware of the agreement being disclosed and that management was investigating the disclosure." Pl.'s Decl. ¶ 9. MVM contends that "[t]he Court should strike the first sentence of paragraph 9 because it is not based on 'personal knowledge'" and "it contradicts Plaintiff's deposition testimony where he admitted that he does not have any actual knowledge that Mr. Carabello informed Mr. Smith about his Complaint and subsequent settlement." Def.'s Mot. to Strike 2. MVM also argues that the Court should strike the second sentence of Paragraph 9 "because it conflicts with Plaintiff's deposition testimony." *Id.* at 5.

Nyonka counters that these "portions of paragraph 9 . . . relate to his direct observation of James Smith's predecessor, Ruben Carabello, reading Mr. Nyonka's confidential settlement agreement." Pl.'s Opp'n to Mot. to Strike 1. He asserts that "Mr. Carabello was project manager at the time . . . and was soon to train Mr. James Smith as his replacement," and Mr. Smith would then "discharge Mr. Nyonka three months after he assumed Mr. Carabello's role and refused to reinstate him three and one half to four months later," such that "[a] jury can reasonably infer that Mr. Carabello was not the only manager who was aware of the terms of the confidential settlement agreement." *Id.* As he sees it, "[b]ecause Mr. Carabello <u>was</u> 'management,' the first sentence of paragraph 9 is undeniably true on summary judgment." *Id.* at 1 n.1.

Nyonka argues for admissibility of the second sentence on that basis that "it is undisputed that Ms. McGuinnis, who was one of MVM's attorneys at one time, was aware of Mr. Carabello's actions," and "a jury may reasonabl[y] *infer* that management made Ms. McGuinnis

16

aware of the disclosure."  Pl.'s Opp'n to Mot. to Strike 2 (emphasis added).  He contends that her

"statements to Mr. Nyonka are not hearsay, because they are not asserted for the truth of the

matters asserted," but rather "reflect Ms. McGuinnis' knowledge of the confidentiality breach

prior to the adverse employment actions taken against Mr. Nyonka."  *Id.*

It is true that Nyonka testified at his September 24, 2015 deposition, prior to providing

his January 13, 2016 Declaration, that he did not "know that [Carabello] informed Mr. James

Smith of [Plaintiff's] settlement" or "told anyone about [his] settlement agreement."  Pl.'s Dep.

97:19–98:14, Jt. Exs. 34–35.  He also testified:

> I was in shock [that Carabello was reading the settlement agreement], so I called
> Ms. McGuinnis and sa[id] I thought this was confidential.  Why did Mr. Carabello
> open up the letter and was reading it.  She said that is what he did. I said course,
> . . . that is exactly what he did, so she said he has to answer a question from his
> bosses.  That is what she told me.  I don't know what happened after that.

*Id.* at 95:12–20, Jt. Ex. 34.  And,

> [u]nder the sham affidavit doctrine, "a party cannot create a genuine issue of fact
> sufficient to survive summary judgment simply by contradicting his or her own
> previous sworn statement (by, say, filing a later affidavit that flatly contradicts
> that party's earlier sworn deposition) without explaining the contradiction or
> attempting to resolve the disparity."

*Zimmerman v. Novartis Pharmaceuticals Corp.*, 287 F.R.D. 357, 362 (D. Md. 2012) (quoting

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)) (emphasis added); *see*

*Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975–76 (4th Cir. 1990) (holding that "the district

court was justified in disregarding the affidavit" of one of plaintiff's experts because it

"contrast[ed] starkly" with and was "in such conflict" with the expert's previous testimony, taken

at a deposition, that "the affidavit should be disregarded as a sham issue of fact").  But,

"[a]pplication of the sham affidavit rule at the summary judgment stage '*must be carefully*

*limited to situations involving flat contradictions of material fact*.'"  *Zimmerman*, 287 F.R.D. at

362 (quoting *Mandengue v. ADT Sec. Sys., Inc.*, No. ELH–09–3103, 2012 WL 892621, at *18 (D. Md. Mar. 14, 2012)).

The sham affidavit rule is inapplicable here.  As for the first sentence (Ruben Carabello's "access to the [settlement] agreement effectively publicized the existence of the settlement agreement amongst management and other employees"), in his Declaration, Nyonka only asserts personal knowledge of Carabello's reading of the agreement.  *See* Pl.'s Decl. ¶ 7 ("I witnessed Ruben Car[]abello reviewing the settlement agreement . . . .").  He does not state in Paragraph 9 that he had personal knowledge of whether Smith knew of the settlement agreement.  Thus, because the first sentence of Paragraph 9 does not present a "flat contradiction of material fact," it is not subject to being stricken under the sham affidavit rule.  *See Zimmerman*, 287 F.R.D. at 362.

With regard to the first part of the second sentence ("Ms. McGuinnis indicated that she was aware of the agreement being disclosed"), while it differs from Nyonka's deposition testimony, it also does not flatly contradict it, as he testified that McGuinnis knew Carabello read it, and that constitutes a disclosure.  Likewise, the second part of the sentence states that "management was investigating," whereas his testimony was that Carabello "has to answer a question from his bosses."   "Bosses," that is, management, questioning an employee about his actions is a form of investigating.  Again, there is no blatant contradiction.  Thus, because the second sentence of Paragraph 9 also does not present a "flat contradiction of material fact," it is not subject to being stricken under the sham affidavit rule either.  *See Zimmerman*, 287 F.R.D. at 362.

Yet, on summary judgment, "[a]n affidavit or declaration used to support or oppose a motion must be made on *personal knowledge* . . . ." Fed. R. Civ. P. 56(c)(4) (emphasis added).

Nyonka's speculation that the contents of his settlement agreement were "effectively publicized . . . amongst management and other employees," beyond Carabello's knowledge, *see* Pl.'s Decl. ¶ 9, is conjecture, not a statement of fact based on personal knowledge.  Indeed, Plaintiff's insistence in his Opposition to Defendant's Motion to Strike that it is reasonable to *infer* that other managers knew of the settlement agreement, *see* Pl.'s Opp'n to Sum. J. 7–8, is a tacit acknowledgment that he has no personal knowledge that Mr. Smith knew about the settlement agreement.  He only had personal knowledge that Carabello, a member of management, read the settlement agreement.  *See* Pl.'s Decl. ¶ 7.  Thus, his statement that Carabello's "access to the [settlement] agreement effectively publicized the existence of the settlement agreement amongst management and other employees" is inadmissible speculation and must be stricken from his Declaration. Fed. R. Civ. P. 56(c)(4).

MVM does not otherwise challenge the second sentence.  I note that it is admissible as a non-hearsay statement "offered against an opposing party" and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  *See* Fed. R. Evid. 801(d)(2)(D).  Additionally, to the extent it is offered to show Ms. McGuinnis's knowledge that Carabello read the settlement agreement, it is not hearsay.  *See* Fed. R. Evid. 801(c)(2). Therefore it is admissible.  *See id.*; Fed. R. Evid. 802.

## Prima Facie Case

"'Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.'" *Wright v. Sw. Airlines*, 319 F. App'x 232, 234 (4th Cir. 2009) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998)).  MVM contends that Nyonka cannot demonstrate the

third element, causation, because Smith, the manager who terminated Nyonka, did not know about his previous lawsuit.  Def.'s Sum. J. Mem. 14–15.  In this regard, *Wright*, 319 F. App'x 232, is informative.

In *Wright*, where causation hinged on the employer's knowledge of the plaintiff's Family Medical Leave Act ("FMLA") request, the Fourth Circuit observed that "it appear[ed] accurate that *certain airline officials* were aware of Wright's FMLA request," but the plaintiff "utterly fails to demonstrate that *the particular supervisors involved in her termination* possessed such knowledge."  319 F. App'x at 234 (emphasis added).  Moreover, "the undisputed affidavits of Wright's supervisors attest that they were unaware of Wright's FMLA request, and the affidavit of the FMLA Coordinator for Southwest attests that she did not inform Wright's supervisors of the request."  *Id.*  On that basis, the Fourth Circuit affirmed the district court's grant of summary judgment based on its conclusion that "[a]s Wright failed to allege facts sufficient to prove that *the supervisors responsible for her termination had knowledge of her FMLA request*, she was unable to establish a prima facie retaliation claim."  *Id.* (emphasis added).

Here, the undisputed evidence establishes that, before Smith terminated Nyonka and failed to rehire him, Carabello read the settlement agreement and McGuinnis knew that it existed and that Carabello read it, and management investigated Carabello's reading of the agreement.  Pl.'s Decl. ¶¶ 7, 9; Pl.'s Dep. Pl.'s Dep. 95:12–20, 97:19–98:14, Jt. Exs. 34–35.  There also is evidence that Carabello trained Smith for a month after reading the settlement agreement and shortly before Smith terminated and failed to rehire Nyonka. Pl.'s Decl. ¶¶ 6–7, Jt. Ex. 130; Pl.'s Dep. 96:22–97:1, Jt. Ex. 34.

Glaringly lacking is any evidence that Carabello or McGuinnis informed *Smith* about the settlement agreement or that *Smith* learned of the agreement through the investigation into

Carabello's reading of it or through any other avenue.  Rather, there is evidence in the form of Smith's own Declaration that "[t]he first time [Smith] learned that Roland Nyonka filed a prior lawsuit against MV alleging discrimination (and settled it) was . . . in late Judge or early July 2014," which "was *after* MVM terminated Mr. Nyonka's employment, effective December 26, 2013."  Smith Aff. ¶ 6, Jt. Ex. 2 (emphasis added).  Thus, as in *Wright*, there is not sufficient evidence to show that Smith in particular, as the "supervisor[] responsible" for terminating Nyonka and not rehiring him, knew of Nyonka's previous lawsuit.  *See Wright*, 319 F. App'x at 234.  Insofar as Nyonka speculates that "[p]resumably more people than Mr. Smith are involved with rehiring," Pl.'s Opp'n to Sum. J. 7, the argument fails for the same reason: Nyonka has not shown that any other unidentified person involved in rehiring knew about Nyonka's previous lawsuit.  *See Wright*, 319 F. App'x at 234.

Based on the evidence before me, it is not reasonable to infer that Smith (or any other unidentified person "[p]resumably" involved in rehiring) knew of the settlement agreement.  It is mere speculation based on a "scintilla of evidence" that no reasonable jury could find as a matter of fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Nyonka "may not create a genuine issue of material fact [to defeat summary judgment] through mere speculation, or building one inference upon another." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999).  Summary judgment on Nyonka's retaliation claim is appropriate.  *See id.*; *Wright*, 319 F. App'x at 234.

## Conclusion

In sum, MVM's Motion to Strike will be granted in part and denied in part, and MVM's Motion for Summary Judgment will be granted.  MVM's Motion to Seal also will be granted.

Additionally, MVM's name will be corrected on the docket.  Judgment will be entered in MVM's favor and the Clerk will close this case.

## <u>ORDER</u>

Accordingly, it is, this <u>11th</u> day of <u>August</u>, <u>2016</u> hereby ORDERED that

1. MVM's Motion to Strike, ECF No. 29, IS GRANTED IN PART AND DENIED IN PART, as follows:

    a. The first sentence of Paragraph 9 and the second two sentences of Paragraph 10 of Plaintiff's Declaration ARE STRICKEN, and

    b. The Motion to Strike IS DENIED as to Paragraph 11 and the second sentence of Paragraph 9 of Plaintiff's Declaration;

2. MVM's Motion for Summary Judgment, ECF No. 26, IS GRANTED;

3. MVM's Motion to Seal, ECF No. 25, IS GRANTED;

4. The Clerk WILL CORRECT the docket to reflect MVM's proper name, MVM, Inc.;

5. Judgment IS ENTERED in MVM's favor; and

6. The Clerk SHALL CLOSE this case.


_____/S/_____
Paul W. Grimm
United States District Judge
